# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MAGALY RAMIREZ,**

              **Plaintiff,**

**-vs-**                                            **Case No. 6:04-cv-176-Orl-KRS**

**CARIBBEAN FOOD MARKET,**
**AUGUSTO BAEZ,**

              **Defendants.**

_____

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause came on for consideration following a bench trial before me pursuant to 28 U.S.C. § 636(c). Having carefully considered the testimony and evidence presented at trial, along with the pleadings filed by the parties, I make the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

**A.  FINDINGS OF FACT.**

1. Defendant Caribbean Food Market is a Florida corporation that operates a food market in Orlando, Florida. It was, at all times relevant to this case, a business engaged in commerce or in the production of goods for commerce as defined by the FLSA.

2. Defendant Manuel Baez, Augusto Baez and Miguel Ortiz purchased Caribbean Food Market in approximately 1998. Manuel Baez became the sole owner of Caribbean Food Market on November 7, 2003.

3. During all relevant times, Augusto Baez was the manager of Caribbean Food Market. He determined the hours worked by the employees, and he was in charge of employee discipline.

4. For approximately six months beginning in January 2001, Manuel Baez was in jail and was, accordingly, not involved with the operation of Caribbean Food Market.[1]  At all relevant times, Manuel Baez relied upon Augusto Baez to manage Caribbean Food Market.  Augusto Baez did not have regular meetings with Augusto Baez to review the operation of the business, the hours worked by the employees, or the money paid to the employees.

5. Between February 2001 and March 21, 2003, Caribbean Food Market did not keep records of the time worked by its employees.

6. Plaintiff Magaly Ramirez was an employee of Caribbean Food Market from before the times relevant to this case until November 7, 2003.

7. Between February 11, 2001 and August 31, 2001, Ramirez worked at Caribbean Food Market six days per week from 8:00 a.m. to 8:00 p.m. She took one-half hour each day for lunch, except for work on

---

[1] I did not consider the proffered evidence about the crime for which Manuel Baez was convicted because the crime was not one involving dishonesty or false statement within the meaning of Federal Rule of Evidence 609(a)(2), which was the legal basis upon which it was offered. *Cf. United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990) ("[C]rimes such as theft, robbery, or shoplifting do not involve 'dishonesty or false statement' within the meaning of Rule 609(a)(2).").

Sundays when she did not take a lunch break.[2] Accordingly, Ramirez worked 29 hours of overtime per week for 29 weeks.[3]

8. Between February 11, 2001 and August 31, 2001, Ramirez was paid $250.00 per week to compensate her for all hours worked.[4] She did not receive any additional compensation for hours worked in excess of forty hours per week.

9. In September 2001, Caribbean Food Market hired another cashier. Thereafter, Ramirez worked only five days a week, but her hours of work otherwise remained the same. Accordingly, between September 1, 2001 and March 21, 2003, Ramirez worked 17.5 hours of overtime per week for 81 weeks.

10. Between September 1, 2001 and March 21, 2003, Ramirez was paid $250.00 per week, which was intended to compensate her for all hours worked. She did not receive any additional compensation for hours worked in excess of forty hours per week.

---

[2] No evidence was presented about the number of Sundays that Ramirez worked during this period. Because it is her burden to prove the overtime hours worked, *see Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1269, 1290 (M.D. Fla. 1999), I will calculate overtime hours by assuming that she took a one-half hour lunch break each day that she worked. The lunch break time is excluded from total time worked when computing overtime compensation. *See* 29 C.F.R. § 785.19.

[3] While Manuel Baez testified that Ramirez was directed not to work more than 40 hours per week, he also testified that he was not directly involved in the supervision of Ramirez. Therefore, I find that he has no direct knowledge of the hours Ramirez actually worked. Accordingly, I credit Ramirez's testimony about the number of hours she worked.

[4] Ramirez did not agree that her salary would compensate her for whatever number of hours she worked during a week, as evidenced by her complaint to Manuel Baez about the amount of money she was being paid.

11. In March 2003, Caribbean Food Market installed a time clock that employees were required to use to register the time they reported to work, the time they left for lunch, the time they returned from lunch, and the time they stopped work at the end of the day.  When Ramirez forgot to punch in or punch out, she manually entered the missing time and Augusto Baez initialed the handwritten entry.

12. Manuel Baez told the employees of Caribbean Food Market that the time clock was installed because two people had sued him for failure to pay overtime compensation.  These suits were based on claims that Caribbean Food Market had not paid employees required overtime compensation.  The suits were settled.

13. Beginning on March 22, 2003, the employees of Caribbean Food Market began using the time clock.  Beginning on the same date, Ramirez was paid $10.00 per hour for forty hours of work a week, as confirmed by the exhibits showing the amount paid and the hours for which payment was made.

14. On and after March 22, 2003, Ramirez worked five days a week.  She worked from approximately 8:00 a.m. to 5:00 p.m., except on Saturday when she worked from approximately 11:00 a.m. to 8:00 p.m. She continued to take one-half hour per day for lunch, except for work on Sundays when she did not take a lunch break.  She did not

receive any compensation for hours worked in excess of forty hours per week.

15. Based upon the time cards admitted into evidence, Ramirez worked 93 hours of overtime from March 22, 2003 through November 7, 2003.[5]

16. Caribbean Food Market, through its owner and manager Augusto Baez, was aware that its employees were working more than forty hours per week but were not being compensated for overtime work as required by the FLSA.

17. Because Caribbean Food Market, through its owner Manuel Baez, was aware of allegations that it violated the FLSA overtime provisions, and because it failed to pay Ramirez overtime compensation as required by the FLSA before *and after* it installed the time clock, Caribbean Food Market did not have an honest intention to ascertain what the FLSA requires and to act in accordance with it.

B. **CONCLUSIONS OF LAW.**

1. The evidence established that Manuel Baez was not involved in the day-to-day operation of Caribbean Food Market and that he did not have responsibility for direct supervision of the work performed by Ramirez. Therefore, he is not an employer as that term is defined by

---

[5] The defendants' argument that they are not responsible for times when Ramirez clocked in before her shift began or clocked out after her shift ended is unavailing. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. . . ." 29 C.F.R. § 785.13.

the FLSA, and he is not individually liable for violations of the FLSA. *See Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986).

2. The evidence established that Ramirez was employed by Caribbean Food Market, that she worked more than forty hours per week while employed by Caribbean Food Market, that she was not paid one and one-half times her regular rate of pay for her overtime work, and that Caribbean Food Market is a business engaged in commerce or in the production of goods for commerce as defined by the FLSA.  Therefore, Caribbean Food Market is liable for violations of the FLSA. *See* 3C KEVIN F. O'MALLEY ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS 637-38 (5th ed. 2001)

3. The evidence established that Manuel Baez, an owner of Caribbean Food Market, was aware that Caribbean Food Market was not keeping proper records of the work performed by its employees, as reflected by his installation of the time clock after FLSA suits to recover overtime compensation were filed.  He was also aware that at least two employees contended that they had not been paid overtime compensation required by the FLSA.  The time cards, of which Augusto Baez was aware as reflected by his signature approving handwritten entries, show that Ramirez was working more than forty hours per week without being paid overtime compensation even after installation of the time clock. These facts are sufficient to put

Caribbean Food Market on notice that it was in violation of the FLSA. Therefore, I conclude that Caribbean Food Market's violation of the FLSA was willful. *See Reich v. Dep't of Conservation and Natural Resources*, 28 F.3d 1076, 1084 (11th Cir. 1994) (Stating that willful violations are "those where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.' [*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)]").

4. Because Caribbean Food Market's violation of the FLSA was willful, the statute of limitations for Ramirez's claim is three years. *See* 29 U.S.C. § 255.  Therefore, Caribbean Food Market must pay Ramirez unpaid overtime compensation from February 11, 2001, three years before the complaint in this case was filed, through November 7, 2003.

5. Under the FLSA, Ramirez is entitled to one and one-half times her regular rate of pay for all hours worked in excess of forty in a given workweek. 29 U.S.C. § 207.  "As long as the minimum hourly rates established by [29 U.S.C. § 206] are respected, the employer and employee are free to establish this regular rate at any point and in any manner that they see fit." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).

6. When an employee is paid a salary, her regular hourly rate is usually determined by dividing the salary by the number of hours that the

salary is intended to compensate. 29 C.F.R. § 778.113. The evidence does not support application of any other computation method in this case.

7. From February 11, 2001 until August 31, 2001, Ramirez worked 69 hours per week at the weekly salary of $250.00. This results in a regular rate of $3.62 per hour.[6] From September 1, 2001 until March 21, 2003, Ramirez worked 57.5 hours per week at the weekly salary of $250.00. This results in a regular rate of $4.35 per hour.[7] Because both regular rates are less than the statutory minimum wage of $5.15 per hour, Ramirez's regular rate of pay for the period February 11, 2001 through March 21, 2003 is deemed to be $5.15 per hour. *See Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 n.1 (5th Cir. 1988).[8]

8. One and one-half times the minimum wage is $7.73 per hour, which is the hourly rate due for hours over forty that Ramirez worked in any workweek when she was a salaried employee. For the period February 11, 2001 through August 31, 2001, Ramirez has already

---

[6] The computation is as follows: Weekly salary ($250.00) divided by number of hours salary was intended to compensate (69) equals regular rate of pay ($3.62).

[7] The computation is as follows: Weekly salary ($250.00) divided by number of hours salary was intended to compensate (57.5) equals regular rate of pay ($4.35).

[8] Ramirez did not make a claim for unpaid minimum wages in this case. Thus, it would be unfair to award Ramirez damages for any unpaid minimum wages in light of the fact the defendants were never put on notice of such a claim. Accordingly, I consider only the amount owed to Ramirez for work in excess of forty hours per week.

been compensated at the rate of $3.62 per hour for all hours worked; thus, she is entitled to the difference between the rate paid ($3.62 per hour) and the overtime rate ($7.73 per hour), which is $4.11 per hour. Accordingly, Caribbean Food Market owes Ramirez $3,456.51 in unpaid overtime compensation for the period February 11, 2001 through August 31, 2001.[9]

9. For the period September 1, 2001 through March 21, 2003 Ramirez has already been compensated at the rate of $4.35 per hour for all hours worked; thus, she is entitled to the difference between the rate paid ($4.35 per hour) and the overtime rate ($7.73 per hour), which is $3.38 per hour. Accordingly, Caribbean Food Market owes Ramirez $4,791.15 in unpaid overtime compensation for the period September 1, 2001 through March 21, 2003.[10]

10. For the period March 22, 2003 through November 7, 2003, Ramirez was compensated at the rate of $10.00 per hour, which is her regular rate of pay for purposes of computing overtime compensation. *See Walling*, 325 U.S. at 424. One and one-half times this regular rate of pay is $15.00 per hour, which is the hourly rate due for hours in excess

---

[9] The computation is as follows: Hourly overtime compensation due ($4.11) multiplied by numbers of hours in excess of forty worked per week (29) multiplied by number of weeks in which overtime hours were worked (29) equals amount of overtime compensation due ($3,456.51).

[10] The computation is as follows: Hourly overtime compensation due ($3.38) multiplied by numbers of hours in excess of forty worked per week (17.5) multiplied by number of weeks in which overtime hours were worked (81) equals amount of overtime compensation due ($4,791.15).

of forty hours that Ramirez worked in any workweek when she was an hourly employee.

11. For the period March 22, 2003 through November 7, 2003, Ramirez did not receive any compensation for hours worked in excess of forty hours per week. Thus, she is entitled to unpaid overtime compensation at a rate of $15.00 per hour during this period. Accordingly, Caribbean Food Market owes Ramirez $1,395.00 in unpaid overtime compensation for the period March 22, 2003 through November 7, 2003.[11]

12. "Any employer who violates the provisions of section 206 or section 207 [of the FLSA] . . . [is] liable to the employee . . . affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission . . . was in good faith and that [the employer] had reasonable grounds for believing that [the] act or omission was not a violation of the Fair Labor Standards Act," 29 U.S.C. § 260.

13. Caribbean Food Market did not sustain its burden of showing that it acted in good faith when it failed to pay Ramirez overtime compensation as required by the FLSA. *See Dybach v. State of Fla.*

---

[11] The computation is as follows: Hourly overtime compensation due ($15.00) multiplied by numbers of hours in excess of forty worked (93) equals amount of overtime compensation due ($1,395.00).

*Dep't of Corrections,* 942 F.2d 1562, 1566 (11th Cir. 1991) ("To satisfy the subjective good faith component, the employer has the burden of proving that it had an honest intention to ascertain what the Act requires and to act in accordance with it."). Therefore, Caribbean Food Market owes Ramirez $9,642.66 in liquidated damages.[12]

**C.    ORDER.**

It is **ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff Magaly Ramirez and against Defendant Caribbean Food Market in the amount of $ 19,285.32.[13]  It is further **ORDERED** that the Clerk of Court shall enter judgment in favor Defendant Manuel Baez.  After judgment is entered, the Clerk of Court is direct to close the file. Motions for attorneys' fees and a Bill of Costs may be filed and served within the time permitted by the rules of the Court.

**DONE** and **ORDERED** this 24th day of June, 2005.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

---

[12] The computation is as follows: Overtime compensation due ($3,456.51 + $4,791.15 + $ 1,395.00 = $9,642.66) equals amount of liquidated damages due ($9,642.66).

[13] The computation is as follows: Total overtime compensation due($9,642.66), *see* fn. 12 *supra,* + liquidated damages due ($9,642.66), *id.*, equals amount of the judgment ($19,285.32).